The next matter on our calendar is Vicki Guerra v. The Commissioner of Social Security. MS. GUERRA Good morning, Your Honors. MS. CHAMBERS I'm Amy Chambers, Amy C. Chambers, on behalf of Ms. Guerra, the plaintiff. Ms. Guerra, we're arguing that remand is proper in this case because the administrative law judge, his residual functional capacity findings lacked support for light work and physical work. He improperly rejected the only two functional opinions of Dr. Landy and Violante and failed to fill in evidentiary gaps. There was no comprehensive assessment that supported the physical light RFC and that created a gap in the record. Ms. Guerra is born in 1962. Her last job that she had before the alleged onset day was sedentary work. Exam findings show abnormalities. She has knee, back, hip degenerative conditions. She had multiple surgeries from the period between 2013 to 2015. We're also arguing that the residual functional capacity lacked support for the mental findings. The administrative law judge reported significant weight to Dr. Baskin, but did not adopt her findings. She found moderate limitations in maintaining attention and concentration, maintaining a regular schedule, and properly dealing with her daily activities. Again, the ALJ, his physical RFC lacked a function-by-function opinion from anybody. It will be pointed out, it is noted there were at least 13 what you call workman's comp opinions that are percentages. Those were not functional opinions. They found her temporarily impaired, but cumulatively that was from 2012 to 2015. This is harmful to her because... Are you arguing that those workers' comp findings were not given, they were given only some weight, I think, is what the ALJ said, and that they should have been considered, given more weight or considered in a different way? Yes. I believe the ALJ gave them some weight as far as they were temporary. And so I don't know percentage-wise how to equate that in terms that it's compatible with light work. But ultimately, light work requires lifting 20 pounds, walking and standing for six hours out of an eight-hour day, and there is a lack of support for that RFC. Her testimony doesn't support it, even if she's walking for therapy based on her mental and physical conditions. She has side effects from the medicine she has to take in order to walk. She has to then elevate her legs for a good portion of the day after that and ice it, again, therapy. And standing, that's another requirement. So... Is your argument based mainly on what her physician said, which in light of a walking three miles and so on could be discounted, or is it that the ALJ's decision was oddly not based on a physician's statement? Because almost always in these cases we have a physician who is saying something else. We do it as to the mental things here, but we don't have, and that's odd, a physician saying what she could do and what she could not do. And that's the thing that is unusual about this case, and I'd be interested in a little bit more discussion of it. Okay. So Dr. Landy and Dr. Violante were, I believe, the only two treating opinions that provided some sort of functional assessment, but what they had found, that she should avoid a number of activities, which is a very extreme thing. So they didn't want her to do any sitting, standing, walking, or lifting. There's nothing that goes to the opposite of that, right? You have the workman's percentage opinions, but there's no opinion that says, okay, she can lift 20 pounds or she can lift 10 pounds. So there is that. Well, there is her testimony is what she did do, like walk three miles and so on. Right. But the question is, is that enough or does VALJ need a physician assessment as well? That's my question. Yeah. I think that there is an evidenter gap where the administrative law judge would need to rely on some functional capacity, an opinion, a medical opinion, which he did not for the physical findings. I don't know if that answers. And this is harmful because Ms. Guerra is, she was born in 1962, so at the ALJ's decision date, which was 2015, she would be 53 years old. That's closely approaching advanced age. And if she was found to be sedentary, which was her first or last job, and unskilled work, she would, the grid rules would apply and she would be found disabled. And she has a long work history, and she had accommodations to the point where the medical secretary work was the last position that she had, and she was still having problems. EMT? Yeah. That was, yeah, a while ago. And then her last position was a medical secretary. And she was having physical problems at that time as well. And the other, what else is harmful is that the vocational expert found that if she was off-task 15 percent of the time, that that would also preclude competitive work. And I think the record as a whole supports that. So are you arguing that the ALJ had an obligation to fill in the gap? We have cases that say that, to make the record complete on which to decide? Can you repeat that, please? Is there a gap in the record? We have cases that say that, that it's the ALJ's responsibility, if there is a gap in the record, to fill that gap. Yes. That's part of the argument, yes. And I believe you have recent opinions.  And also Mirena, I believe, has a similar fact pattern where the doctors found very extreme avoidance activities, and the court said, well, you can't just, you can't have a, you know, you have to find out what functionally she can do. If she can't do everything, what can she do? Oh, there's one other thing I forgot. I'm sorry. I completely forgot. So the other piece of this, and this is actually a harder piece, because this is new and material evidence that it is related to her conditions. There were some imaging testing done in May and June that showed she had degenerative conditions still. And then there actually was a functional capacity evaluation, but it was done by, you know, an occupational therapist or someone who's not a doctor. And that capacity evaluation in July was, demonstrated sedentary work, that she would be capable of sedentary work. So, again, it's harmful, you know, because that's the only opinion on record. It's an other opinion, and it's not treating other opinions. Buffalo ergonomics opinion? Yes. My difficulty with that, the appeals counsel, with that argument, and help me understand, is the evaluation of your client's past conditions. So what am I missing? Is there something new in it that relates to her condition at the relevant time, as opposed to her condition after the ALJ is decided? Well, I would say there was no, like, there was no change or causal effect that would have changed her condition that was related to her conditions. She does have degenerative conditions, but it, I guess, how to put this, it relates to the conditions that she was experiencing prior to the ALJ's decision. But also, like, the ALJ said, okay, she improved. But the ALJ, you know, there was no functional indication of how she improved, and the MRIs and that functional capacity suggests that her conditions were worse than what the judge found, or how he interpreted the percentage findings and all that. So that's. Thank you. Thank you. Thank you. Have you reserved time for rebuttal? No rebuttal. We'll hear from the Commissioner. Good morning, Your Honors. May it please the Court. My name is Heather Sertial, and I represent the Commissioner of Social Security. Plaintiff argues that there is a gap in the record. However, this Court has held in prior cases, Tanquisi, Pelham, and Monroe, that if there is substantial evidence in the record, there is no need to supplement it with an additional medical opinion. The RFC properly, the ALJ properly determined the RFC, and that plaintiff can perform light work with certain exertional and non-exertional limitations. The district court affirmed the ALJ's decision, and we ask this Court to also affirm the decision. First, the ALJ properly afforded some weight to Dr. Violante's opinion, plaintiff's treating orthopedist. Dr. Violante opined that plaintiff had some limitations in pushing, pulling, lifting, and carrying, no limitations in sitting, and that she should avoid walking and other postural activities. However, Dr. Violante's opinion was issued in August of 2013, contingent upon plaintiff undergoing left knee surgery. Pursuant to the surgery, plaintiff improved her condition. Dr. Violante predicted that plaintiff could return to light duty work. Just in November of 2013, a month after the ALJ's decision, I'm sorry, the month after plaintiff's left knee surgery, plaintiff was doing remarkably well, according to Dr. Violante. She indicated that she was very pleased with the surgery. She even, excuse me, indicated that she was walking for three miles by the river every day for exercise. The ALJ also properly considered the daily activities. As counsel noted, plaintiff was walking for three miles every day and continued to do so throughout the relevant period. She did so in November of 2013, transcript reference 507. She did so in February of 2015 and January of 2015. The ALJ also considered plaintiff's daily activities. She was able to maintain her own independent grooming, her own grooming independently. She was able to do chores, such as taking care of her pet. I can see all that. My question is, do we require, despite everything, do we require some medical testimony that supports the position of the ALJ when there is testimony on the other side that is weak and traversed by her description of her behavior and so on? So, you know, I'd have no problem in this case if there were some medical testimony supporting the ALJ's position. I'm wondering whether what you're really asking us to do is on the basis of her medical testimony saying that the ALJ's position is justified. And that may be okay, but it's a very unusual thing for us to do. Yes, Your Honor. In Pelham v. Strew, the circuit decided that the medical findings themselves can constitute substantial evidence, and the medical findings throughout the record show that plaintiff, after her surgeries, recovered successfully. She had full range of motion. So you are saying that we properly, that the ALJ properly relied on her medical findings together with her behavior to come to the conclusion? Yes, Your Honor. The ALJ properly afforded some weight to Dr. Violante's opinion, who said she could return to light-duty work. And the ALJ also properly considered her daily activities, her own testimony that she was walking three miles per day, and the medical findings that showed largely normal X-rays of her left knee and her lumbar spine, that she was walking with a normal gait, that she had full muscle strength and full range of motion in her upper and lower extremities, and that in her left knee she eventually had no motor weakness or tenderness and normal motor tone and strength. So this Court has previously held that when there is sufficient evidence in the record, the ALJ does not need to contact a consultative examiner or seek additional information in advance of rejecting a benefits claim. Thank you. The ALJ also properly afforded little weight to the opinion of Dr. Landy. Dr. Landy also opined in August of 2013 that plaintiff, by checking off boxes, that plaintiff should avoid almost all postural activities. However, this opinion was also contingent upon plaintiff completing a successful back surgery, and he also opined that plaintiff could return to her prior work. His treatment notes just after the surgery indicated that she had 50 to 60 percent improvement in back pain, that she was doing well, that she had a normal gait, and that she decreased two of her pain medications by 50 percent and 67 percent, respectively. Plaintiff even indicated that she wanted to return to walking six miles per day. The ALJ also considered her own testimony. Can I ask about Dr. Landy for a moment? It doesn't look like the ALJ explicitly considered the Burgess factors when assigning little weight to that 2013 opinion. And how should we think about that? I realize one thing about Dr. Landy's opinions is they change over time. So in 2013, she should be avoiding all work, but then she receives treatment, and later he has her at 25 percent disability and says you don't need to keep coming back, you can come back as needed. So they change over time. So help me understand whether the ALJ's somewhat summary treatment of that 2013 opinion is enough. Yes, Your Honor. I believe you're referring to this Court's recent decision in Estrella v. Berryhill. In Estrella, the Court held that if the ALJ did not explicitly consider the treatment relationship, whether the physician was a specialist, and the consistency and supportability that the Court should provide good reasons for the weight given to the treating source opinion so that a search and review of the record would assure the Court that the substance of the treating physician rule was not traversed. However, in the opinion, you'll see that the ALJ did a very detailed analysis of all the treating physicians, including Dr. Landy and Dr. Violante. He discussed almost all of Dr. Landy's treatment notes. He discussed Dr. Landy's August 2013 opinion just before he issued his own that showed that she had good muscular strength in her lower extremities. He also discussed the surgery and Dr. Landy's opinions after the surgery. He mentioned that Dr. Landy was a plaintiff's neurosurgeon. And this case can be distinguished from Estrella because in Estrella there was almost five years of medical records by the treating psychiatrist, and the ALJ didn't discuss the majority of those notes. So this case is distinguishable because the ALJ did a very detailed discussion of almost all of the treating physician's notes. Roberts. Thank you. So before the relevant period, the ALJ also mentioned that before plaintiff after plaintiff's first knee revision in September of 2012, plaintiff resumed work again in December of 2012. So she was working up until April of 2013, which is the date she alleged she became disabled, which was also coincidentally the date that she was involuntarily removed. Plaintiff also mentions that plaintiff mentions that, excuse me, Your Honors, that there was side effects. However, the record indicates that she was taking Lyrica, Cymbalta, and Lortab without any adverse side effects. Plaintiff also mentioned the worker's compensation, temporary disability ratings. However, this Court has previously held that the worker's compensation uses a different standard than the Social Security Act, and for that reason those opinions were afforded little weight. Plaintiff also mentions that she previously performed her past relevant work as a billing clerk, which is sedentary, but to the extent that plaintiff argues that the RFC should have been sedentary, that those arguments were waived because they were not raised before the district court. In fact, as previously mentioned, plaintiff did show that she was capable of performing light work. Plaintiff also mentions the new and material evidence that was submitted before the Appeals Council. However, the Appeals Council was correct in determining that the evidence would not have changed the ALJ's decision. Plaintiff did have an additional knee revision in March of 2015 to correct a stress fracture. However, the evidence that was submitted to the Appeals Council that was dated both during the relevant period and after the relevant period showed a progression and an improvement in plaintiff's condition, so it would not have changed the ALJ's decision. For instance, in April of 2015, plaintiff resumed 5 out of 5 strength in her quadriceps and hamstrings. By April 30th, 2015, Dr. Violante, who performed the revision, said functionally she's doing great. He said she had 115 degrees of flexion. Prior, she had 90 degrees degree of flexion in her left knee, showing consistent improvement. By April — by May 14th, 2015, just a week after the ALJ's decision, she had improvement in range of motion in her left knee to 120 degrees, almost full and stable knee testing. These findings were almost exactly the same as her findings during the relevant period when she was walking for 3 miles per day. Plaintiff also mentions the report issued by occupational therapist King on July 23rd, 2015. First, O.T. King is not an acceptable medical source, and he didn't opine his — he didn't opine to the relevant period. There is no evidence that the report related to plaintiff's functioning during the relevant period. In either event, O.T. King found that she had mild limitations in sitting, standing, walking, and balancing, which is consistent with light work. Although plaintiff argues that — that occupational therapist King said that plaintiff is capable of sedentary work, O.T. King only — only mentioned that she could lift up to 10 pounds of sedentary work. The time has expired. In conclusion? In conclusion, Your Honor, we ask that — we ask that the Court affirm the decision of the Commissioner, and if there's no further questions, we rest on our brief. Thank you. Thank you. Thank you both. The defense will reserve decision. The last cases on our calendar are on submission, so I'll ask the clerk to adjourn court. Fourth sentence adjourned. Thank you.